UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEVEN NELSON FURR,

                              Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

**DECISION AND ORDER**

1:18-CV-00830 (JJM)

_____

This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of defendant Commissioner of Social Security that plaintiff was not entitled to disability insurance benefits ("DIB") or Supplemental Security Income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [9, 11].[1] The parties have consented to my jurisdiction [13]. Having reviewed the parties' submissions [9, 11, 12], the action is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

**BACKGROUND**

The parties' familiarity with the 648-page administrative record is presumed. The plaintiff, who was 29 years old, filed applications for DIB and SSI on June 23, 2015 and June 30, 2015, respectively. Administrative Record [7], p. 15. The claims were initially denied. Id., p. 15. Administrative Law Judge ("ALJ") Roseanne M. Dummer conducted a video hearing on November 22, 2017. Id., pp. 15, 37. Plaintiff appeared with his attorney. Id. ALJ Dummer

---

[1]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

heard testimony from the plaintiff and vocational expert James Soldner. Id., pp. 37-65. On December 13, 2017, ALJ Dummer issued her Decision denying plaintiff's claim. Id., pp. 15–31.

**A.     The ALJ's Notice of Decision**

ALJ Dummer concluded that plaintiff was not disabled from work. She analyzed the medical and other evidence in the context of the well-settled, five-step test used to determine whether a claimant is entitled to disability benefits. Administrative Record [7], pp. 16-17, *citing* 20 C.F.R. §§ 404.1520, 416.920.[2]   ALJ Dummer determined that plaintiff's severe impairments were obsessive-compulsive disorder ("OCD"), depressive disorder, anxiety disorder, degenerative disc disease, obesity, and hypertension. Id., p. 17. At step three, ALJ Dummer performed a "paragraph B" analysis concerning plaintiff's mental impairments. She found that plaintiff had mild limitations in understanding, remembering, or applying information; and adapting or managing oneself. She found plaintiff had moderate limitations interacting with others; and concentrating, persisting, or maintaining pace. Id., pp. 18-19.

In order to continue her analysis at steps four and five, ALJ Dummer considered the medical evidence of plaintiff's functional limitations to determine plaintiff's residual functional capacity ("RFC") due to his physical and mental conditions.

---

[2] The five steps are: 1) is plaintiff engaged in substantial gainful activity; 2) does plaintiff have a medically determinable, severe impairment or combination of impairments; 3) do plaintiff's severe impairments meet or equal the criteria of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; 4) after determining plaintiff's residual functional capacity, can plaintiff perform his or her past relevant work; and 5) can plaintiff perform any work, considering her residual functional capacity, age, education, and work experience? *See* 20 C.F.R. §§ 404.1520, 416.920; Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. *See* Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.     The ALJ's RFC Analysis**

ALJ Dummer rejected all of the medical opinions in the record concerning plaintiff's physical and mental functional limitations.

1. **Evaluation of the Evidence of Plaintiff's Physical RFC**

With respect to plaintiff's physical conditions, ALJ Dummer considered the opinions of consultative examiner, Hong-Biao Liu, M.D., and treating primary care physician, Mary Rykert-Wolf, M.D. [7], p. 26. Dr. Liu examined plaintiff on August 31, 2015 and noted some decreased range of motion in plaintiff's lumbar spine and hips. Id., pp. 262-64. His examination was otherwise unremarkable. Id. He found that plaintiff had no exertional limitations, but recommended that the plaintiff "avoid dust and other irritating factors to limit asthma attacks." Id., p. 265. ALJ Dummer gave Dr. Liu's opinion "limited" weight, explaining, "[t]he medical evidence of record does not appear to show asthma exacerbations or significant treatment." Id., p. 26.

Dr. Rykert-Wolf's treatment notes documented treatment of plaintiff's physical and mental health conditions between 2013 and 2017. Id., pp. 292-528. Among other things, she treated plaintiff for complaints of knee pain between August of 2015 and October of 2016. *See* id., pp. 366-67, 363, 360-61, 352, 350-51, 346-47, 341-42, 334-38, 314, 306-07, 299-303. On October 13, 2016, she recommended that plaintiff "limit walking to 15 minute[s] twice daily, avoid hills, stairs, uneven surfaces." Id., p. 298. ALJ Dummer assigned this functional assessment "limited weight", explaining, "[t]he findings appear to be for duration, based on the claimant's subjective complaints of knee pain following increased exercise". Id.

After reviewing and assigning limited weight to both opinions, ALJ Dummer concluded that plaintiff "could perform a range of medium work, involving lift/carry fifty pounds

occasionally and twenty-five pounds frequently; sit six of eight hours and stand/walk six of eight hours." Id., p. 26.

2. **Evaluation of Evidence of Plaintiff's Mental RFC**

Turning to plaintiff's limitations due to his mental health conditions (OCD, depressive disorder, and anxiety disorder), ALJ Dummer accorded "some" weight to the August 31, 2015 opinion of the consultative examiner, Susan Santarpia, Ph.D. [7], p. 27. She nonetheless rejected Dr. Santarpia's finding that the plaintiff had no mental impairment (id., pp. 18-19) because "the other objective evidence indicates that the claimant experienced some mental symptoms throughout the relevant period". Id., p. 27, *citing* medical records from DENT (id., pp. 547-92) and Community Concern (id., pp. 622-31).

ALJ Dummer assigned "limited" weight to the opinion of state agency psychological consultant, S. Bhutwala, Ph.D. Dr. Bhutwala found that plaintiff had no impairment based upon his review of the opinions of Drs. Santarpia and Liu, and a July 13, 2015 report from DENT. Id., pp. 27, 70, 90. ALJ Dummer rejected this opinion because "the other objective evidence indicates that the claimant experienced some mental symptoms throughout the relevant period", citing the records from DENT and Community Concern. *See* Id., pp. 27, 547-92, and 622-31.

However, ALJ Dummer considered and rejected the opinions and statements of plaintiff's treating mental health providers at DENT and Community Concern about plaintiff's limitations, assigning them "little", "limited", and "minimal" weight. Id., pp. 27-28. ALJ Dummer gave "little" weight to correspondence from providers at DENT excusing plaintiff from work and jury duty. Id., pp. 26-27, 268-69, 586. She explained that the notes restricting plaintiff from work "appear to be durational" and were made in response to plaintiff's "presentation of

severe anxiety and depression". Id., p. 27. The note excusing plaintiff from jury duty was "vague" and did not "specify the claimant's functional abilities". Id.

ALJ Dummer also assigned "limited" and "minimal" weight to functional assessment questionnaires completed by two of plaintiff's treating providers at Community Concern: Traci Raynor, a Nurse Practitioner (id., pp. 619-21); and Tammy Lyn Davis, a treating Licensed Mental Health Counselor (id., pp. 632-38). ALJ Dummer rejected Ms. Raynor's opinion that plaintiff was "very limited" in several areas of functioning because it was contradicted by the conservative nature of plaintiff's treatment, which included "only counseling and medication" and "did not require any mental health hospitalizations". Moreover, ALJ Dummer found Ms. Raynor's opinions contrary to "mental status examinations throughout the record", which "do not delineate the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled". Id., p. 28.

Ms. Davis completed a "check the box" Mental Impairment Questionnaire and opined that plaintiff was "unable to meet competitive standards" or "seriously limited" in his ability to perform many of the functions required for semi-skilled and unskilled work. She also stated that plaintiff would miss more than four days of work per month, could not engage in competitive employment on a sustained basis, and was unable to work full time. Id., pp. 28, 633-38. The ALJ gave Ms. Davis's opinions "minimal" weight, as they were internally inconsistent in one area of functioning, and inconsistent with her view of Ms. Davis's treatment notes, which documented medication management, reports of improvement in plaintiff's mood swings and anxiety on some occasions, and recommended only conservative treatments. Id., p. 28. ALJ Dummer stated such treatments and techniques were "inconsistent with disability". Id.

After rejecting all of the opinion evidence of plaintiff's functional limitations, ALJ Dummer found that plaintiff had the RFC to "understand, remember and carry out instructions for routine, repetitive unskilled work", "sustain attention and concentration for two-hour segments of time in an eight-hour day", "interact with others occasionally (*i.e.*, co-workers and supervisors)", "interact with the public on a rare to occasional basis", "adapt to changes in work setting for routine, repetitive unskilled work", and "should avoid fast paced or high production goal work". Id., pp. 19, 28.

At steps four and five of the analysis, ALJ Dummer concluded that plaintiff could perform his past work and, in addition, that there were unskilled medium and light work jobs in significant numbers in the national economy that an individual with the plaintiff's age, education, work experience, and RFC could perform. Id., pp. 29-30. Accordingly, ALJ Dummer found that plaintiff did not have a disability as defined by the Social Security Act from April 9, 2015 through the date of her decision. Id., p. 31. The Appeals Council denied plaintiff's request for review. Id., p. 1.

## ANALYSIS

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. § 405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well settled that an adjudicator determining a claim for DIB and/or SSI employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§ 404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. *See* Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

Plaintiff argues that ALJ Dummer erred in three ways, resulting in an RFC not supported by substantial evidence. First, plaintiff argues that Dr. Santarpia's opinion was not substantial evidence because it did not consider subsequent deterioration in plaintiff's condition and was not based upon a complete record. Plaintiff's Memorandum of Law [9-1], pp. 15-20. Second, plaintiff argues that the ALJ improperly evaluated the opinions of Ms. Raynor and Ms. Davis in several ways, by: a) failing to assign them proper weight (id., pp. 20-22); b) assigning Ms. Davis's opinion less weight because of its "check the box" format (id., pp. 22-23); c) failing to obtain clarification concerning any inconsistencies in Ms. Davis's report before rejecting it (id., pp. 23-24; and d) improperly interpreting the remaining medical evidence (*i.e.* "mischaracterization of the record") to reject Ms. Davis's and Ms. Raynors' opinions of plaintiff's limitations and relying upon those improper interpretations to craft plaintiff's RFC (id., pp. 24-26). Lastly, plaintiff argues that the ALJ improperly substituted her own, lay opinion of the medical evidence to make her findings concerning plaintiff's RFC.[3] Plaintiff's Memorandum of Law [9-1], pp. 15-26, 27-30.

In response, the Commissioner argues that: the ALJ properly evaluated the medical opinions in the record; the ALJ did not rely upon the opinions of Dr. Santarpia and Dr.

---

[3] Although it is unclear to me whether plaintiff intends this argument to apply to both the physical and mental elements of the RFC, because the plaintiff argued in point two that the ALJ's RFC findings were based on an improper interpretation ("mischaracterization") of the remaining evidence, and because the Commissioner responds to this argument by asserting that all elements of the RFC are supported by substantial evidence, I consider this argument to apply to all the elements of the RFC as well.

Bhutwala to determine plaintiff's RFC; and substantial evidence in the record of plaintiff's functional capacity from doctors, psychologists, nurse practitioners, and counselors supports the ALJ's mental and physical RFC determination, and it was not, therefore, based upon the ALJ's "lay opinion" of the evidence. Commissioner's Brief in Response [11-1], pp. 1, 8-15. I agree with plaintiff that, due to the ALJ's legal errors, her RFC determination is not supported by substantial evidence. I therefore remand this matter for further proceedings.

**B.      Was it a Legal Error for the ALJ to Craft an RFC After Rejecting All the Opinions in the Record Concerning Plaintiff's Physical and Mental Limitations?**

The Commissioner argues that, even though the ALJ rejected all of the opinion evidence concerning plaintiff's physical and mental limitations, the RFC was not drawn from the ALJ's lay opinion, but was supported by substantial medical evidence from all of plaintiff's providers:

> "This is not a case where the absence of a medical source statement made the record incomplete. Rather, this is a case where the medical record from the relevant period was complete and the ALJ made a reasoned, supportable decision based upon the evidence before her. While obtaining an opinion from a medical source might be necessary if there are no treatment records, here there was sufficient evidence about Plaintiff's functioning from examination findings, treatment records, and treatment recommendations from several doctors, psychologists, nurse practitioners, and counselors (Tr. 256-645). Thus, because the evidence was adequate to determine whether Plaintiff could work despite his health issues, the ALJ was not obligated to supplement the record by acquiring a medical source statement on this question. *See* 20 C.F.R. § 404.1513(b)(6) (the agency 'will request a medical source statement' from a claimant's treating physician but the 'lack of the medical source statement will not make the report incomplete')."

Commissioner's Brief [11-1], pp. 14-15.

While I agree that a "medical source statement" may not be required where there is other medical evidence in the record concerning plaintiff's functional abilities, I disagree that

-8-

any such evidence is present here. It was a legal error for the ALJ to make physical and mental RFC determinations where she rejected all the opinions in the record concerning plaintiff's functional limitations and supported her findings with her own interpretation of the remaining evidence. *See* Plaintiff's Memorandum [9-1], pp. 24-26.

Absent medical evidence of a plaintiff's functional limitations, "[n]either the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (*citing* Shaw, supra). When an ALJ rejects all the evidence in the record concerning a plaintiff's functional mental or physical limitations, she creates an evidentiary gap in the record. Guttierez v. Berryhill, 333 F.Sup.3d 267, 271 (W.D.N.Y. 2018) ("[t]he ALJ acknowledged Dr. Healey's opinion and afforded it "little weight" for various reasons. . . . Regardless of whether the ALJ properly discounted this opinion, she created a gap in the record when she rejected the only opinion as to Guttierez's mental ability to perform work-related functions on a regular and continuing basis"). The ALJ may not fill this gap with her own view of the remaining medical evidence. Instead, "[a]t the very least, the ALJ should have sought a conclusive determination from a medical consultant who was able to evaluate the plaintiff's entire medical record, given the absence of other evidence in the record by treating or examining sources specific to plaintiff's non-exertional limitations." Stackhouse v. Colvin, 52 F.Supp.3d 518, 521 (W.D.N.Y. 2014) (internal quotation and citation omitted). The absence of substantial evidence to support an ALJ's findings concerning a plaintiff's residual functional capacity is a basis for remand. Mariani v. Colvin, 567 Fed. Appx. 8, 11 (2d Cir. 2014) (Summary Order).

Mariani, supra, is illustrative. There, the Second Circuit reviewed an ALJ's determination that a plaintiff could use his hand fifty percent of the time. To arrive at his determination, the ALJ rejected the opinion of the plaintiff's treating physician, who concluded the plaintiff could not use his hand at all. The ALJ also rejected the consulting physician's conclusion that the plaintiff's hand and finger dexterity were intact. The Court found that the ALJ improperly crafted a residual functional capacity after rejecting all the opinions in the record concerning plaintiff's ability to use his hand and remanded the case for further development of the record:

> "Medical evidence at both ends of the spectrum, however, is not substantial evidence for a finding that the extent of the disability is fifty percent capacity. . . . There is no other evidence in the administrative record that provides substantial evidence for the ALJ's fifty percent finding. . . . Because there is not substantial evidence for the ALJ's finding . . . we cannot uphold the ALJ's decision to reject Mariani's claim for disability benefits. Further findings would plainly help to assure the proper disposition of Mariani's claim; therefore, remand for further factfinding as to the extent of Mariani's hand impairment is the appropriate remedy."

Mariani, 567 Fed. Appx. at 10-11 (internal quotations and citations omitted). Here, as in Mariani, ALJ Dummer assessed a physical RFC ("range of medium work" with restrictions for lifting/carrying, sitting, and standing/walking) that lies somewhere between the two extremes represented by the opinions of Drs. Liu (no limitations) and Ryker-Wolfe (walking limited to 15 minutes twice per day). See [7], pp. 19, 26. ALJ Dummer did not point to any medical evidence to support the specific limitations which she incorporated into the RFC. Accordingly, remand is necessary for further factfinding with respect to plaintiff's exertional functional limitations.

This court applied the same analysis with respect to a plaintiff's mental health conditions in Guttierez, supra. There, the plaintiff suffered from severe impairments of obesity, and bipolar, anxiety, and attention deficit hyperactivity disorders. The only opinion in the record

concerning plaintiff's functional limitations was that of her treating psychiatrist, Dr. Healey. Dr. Healey opined that the plaintiff had extreme or marked limitations in her ability to perform most work-related functions. Id. at 271. The ALJ afforded Dr. Healey's opinion "little weight", finding that the plaintiff could perform medium work, perform routine and repetitive simple tasks, make simple work-related decisions, and interact frequently with supervisors, coworkers, and the public. Id. at 270-71. The other medical evidence in the record contained information such as plaintiff's Global Assessment of Functioning scores, mental status examinations, diagnoses, and treatment plans, but did "not opine as to Guttierez's ability to work." Id. at 272. Accordingly, the court concluded that the ALJ's determination of the plaintiff's RFC was not supported by substantial evidence and remanded the case for further proceedings:

> "It is unclear to the Court how the ALJ, who is not a medical professional, was able to make this determination without relying on a medical opinion. . . . Without reliance on a medical source's opinion or a function-by-function assessment connecting the medical evidence to the RFC, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review. Accordingly, the Court finds that the ALJ's RFC assessment is not supported by substantial evidence and that remand is required."

Id. at 272-73.

"In the absence of opinion evidence, the ALJ's equating this type of information - treatment notes, observations by Plaintiff's providers, Plaintiff's medications and response to treatment, and activities of daily living - to specific functional capacities, was improper. Where the record primarily discusses a plaintiff's impairments, symptoms, and treatment, but does not shed light on the plaintiff's limitations, the ALJ may not rely on the record in determining the plaintiff's RFC." Dye v. Commissioner of Social Security, 351 F. Supp. 3d 386, 392 (W.D.N.Y. 2019); *see also* Stoeckel v. Commissioner of Social Security, 2019 WL 5445518, *3-4

(W.D.N.Y. 2019) ("the effect a mental impairment has on one's ability to work is not the sort of inquiry susceptible to lay evaluation. . . . the Court concludes that the ALJ erred when he rejected all of the record medical opinions and proceeded to evaluate Stoeckel's mental RFC based on his own lay interpretation of the evidence").

It is not evident what record evidence permitted ALJ Dummer, as a lay person, to reach a very specific RFC that plaintiff can, for example, interact occasionally with co-workers and supervisors, sustain attention and concentration for two-hour segments in an eight-hour day, or adapt to changes in a work setting for routine, repetitive, unskilled work. *See* Administrative Record [7], p. 19. It is unclear to me "how the ALJ, who is not a medical professional, was able to make this determination without relying on a medical opinion." Guttierez, 333 F.Supp.3d at 272.

ALJ Dummer erred when she failed to fill the evidentiary gap created by her rejection of all the opinion evidence in the record with respect to plaintiff's physical and mental limitations, and then assessed specific functional limitations based upon her interpretation of the medical and other evidence. This resulted in an RFC that was not supported by substantial evidence. Accordingly, this matter is remanded to the Commissioner for further proceedings.

**CONCLUSION**

For the reasons stated above, plaintiff's motion for judgment on the pleadings [9] is granted to the extent that this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order, and is otherwise denied. Accordingly, the Commissioner's motion for judgment on the pleadings [11] is also denied. Because this matter is remanded for further development of the record concerning plaintiff's mental and physical

limitations, I do not reach the parties' remaining arguments concerning whether the ALJ properly weighed the opinions of Dr. Santarpia, Ms. Raynor, and Ms. Davis.[4]

**SO ORDERED**.

Dated: February 19, 2020

                                                /s/ Jeremiah J. McCarthy
                                                JEREMIAH J. MCCARTHY
                                                United States Magistrate Judge

---

[4] "I need not reach the issue of whether the ALJ properly discounted the opinions of Annabel and Toor because I conclude that even assuming he did, the ALJ's rejection of the opinions created an evidentiary gap in the record requiring remand." Wilson v. Colvin, 2015 WL 1003933, *2 (W.D.N.Y. 2015).